**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
ANNA POVINELLI,

               Plaintiff,

      -against-

KROLL, LLC,

               Defendant.
-------------------------------------------------------------------------X

**Case No.**

**COMPLAINT**

Plaintiff, Anna Povinelli, by her attorneys, Kaiser Saurborn & Mair, P.C., as and for her complaint against defendant, alleges as follows:

### PARTIES, JURISDICTION, AND NATURE OF ACTION

1.     Plaintiff, Anna Povinelli ("plaintiff" or "Povinelli"), is a former Managing Director of Kroll.

2.     Defendant, Kroll, LLC ("defendant" or "Kroll"), is an institution authorized to do business in New York State.

3.     Venue is properly laid in this court in that the causes of action arose in New York County.

4.     Kroll discriminated against Ms. Povinelli based upon her gender, subjected her to sexual harassment and retaliated against her for objecting to the harassment and discrimination. Kroll's stated reasons for its adverse treatment of Ms. Povinelli were a pretext for its facilitation of unlawful gender discrimination and retaliation. Ms. Povinelli asserts claims under Executive Law §296 and New York City Administrative Code §8-502(a).

5.     Since Plaintiff and Defendant are domiciled in different states and the amount in controversy exceeds $75,000.00 this court may exercise diversity jurisdiction pursuant to 28 USC 1332 (a).

**BACKGROUND**

**I.**

**MS. POVINELLI'S EMPLOYMENT**

6.      Ms. Povinelli began her employment with Kinetic Partners on or about October 7, 2014, which was acquired by defendant Kroll (f/k/a Duff & Phelps) in January 2015.

7.      Due to her superior work performance, Ms. Povinelli quickly rose through the ranks from Associate Director at Kinetic Partners to Managing Director at Kroll.

8.      As a Managing Director ("MD") at Kroll in the Financial Services Compliance and Regulation service line ("FSCR"), Ms. Povinelli was responsible for the supervision and oversight of the U.S. team of approximately 40 individuals and a team of approximately 15-20 people in Mumbai, India.

9.      Ms. Povinelli and Alyssa Heim ("Heim"), also a Managing Director, were responsible for supervising the team and providing ongoing compliance support and certain project support to approximately 300 clients.

**II.**

**THE GENDER DISCRIMINATION AND RETALIATION**

10.      During the weekend of Thanksgiving 2023, Ms. Povinelli left her work cell in her handbag causing the battery to drain. When she charged it on Monday, November 27, 2023, she received a text from Ms. Heim, sent from Ms. Heim's work cell number. Shockingly, Ms. Heim engaged in sexting on her work phone and sent a graphic naked video of herself to plaintiff.

11.      Ms. Heim's sexting begins with her laying on a bed, on her right side, facing the camera. Ms. Heim is close to the camera such that her head and upper body to her knees are in frame.

2

12.     In the video, Ms. Heim is completely naked. She is filming both of her breasts,

including nipples and her bare groin. At one point she shifts her body to get closer to her camera.

Ms. Heim has music playing in the background and is staring directly into the camera. She is

expressionless and does not say a word during her video.

13.     Ms. Heim then turns her video off after filming her breasts and bare groin for over

a half a minute.

14.     Disgusted and shocked, Ms. Povinelli decided she needed to report the sexting

and relied on Kroll's human resources department to thoroughly conduct a sexual harassment

investigation.

15.     Ms. Povinelli first reached out to Tysheima Muckle ("Muckle"), in her capacity as

Chief Human Resource Officer of GRA, on November 27, 2023, to discuss the video and how it

greatly disturbed and upset her.

16.     Ms. Muckle's brushed Ms. Povinelli off, stating she was too busy with

performance reviews to address the incident. Ms. Povinelli insisted, however, and conveyed to

her that this was an urgent matter.

17.     Ms. Muckle promised to call her back, but never did.

18.     On November 29, 2023, Ms. Povinelli communicated with Colton Lewis

("Lewis), in his capacity as FSCR's Human Capital Partner.  Ms. Povinelli told him about Ms.

Heim's sexting her the naked video and how it greatly disturbed her.

19.     Mr. Lewis was uninterested and also took no action. He merely suggested that

Ms. Povinelli speak to a Human Resources Manager, Susan Riskin ("Riskin").

20.     So, on December 4, 2023, Ms. Povinelli complained to Ms. Riskin about the sexting incident. Ms. Povinelli showed the naked video to Ms. Riskin, who expressed her shock and disgust at Ms. Heim's behavior.

21.     On or about December 7, 2023, just three days after Ms. Povinelli's meeting with Ms. Riskin, Ms. Riskin called Ms. Povinelli to her office to give her an update.

22.     Ms. Riskin stated that "it was all just a mistake." Despite the fact Ms. Heim's sext was sent from her Kroll business phone number to Ms. Povinelli's Kroll business phone number, Ms. Riskin said that Ms. Heim's sext was meant for her boyfriend, not Ms. Povinelli.

23.     Ms. Riskin asked Ms. Povinelli if she wanted an apology from Ms. Heim, and then demanded that Ms. Povinelli delete her copy of the sext and not discuss the matter any further with anyone.

24.     Ms. Riskin also told Ms. Povinelli that Giles Derry, President of Kroll's GRA, and Christopher Matteson, Kroll's General Counsel and Secretary, were the only other individuals who were made aware that Ms. Heim sexted plaintiff.

25.     Ms. Riskin advised Ms. Povinelli that the incident was now "over" and she needed to "move on and continue to work with Ms. Heim."  Neither Mr. Derry nor Mr. Matteson ever reached out to Ms. Povinelli to make any investigative inquiries or to even simply check in with Ms. Povinelli.

26.     On or about December 18, 2023, Ms. Povinelli's superiors, Ms. Melis and Mr. Inman, had a check-in call with Ms. Povinelli to discuss the FSCR team and during that call Ms. Povinelli broke down crying and expressed her shock and dismay as a consequence of having viewed Ms. Heim's naked and sexually provocative video.

27.     Neither Ms. Melis nor Mr. Inman took any action in response to Ms. Povinelli's

complaints.

28.     The next day, on or about December 19, 2023, Ms. Riskin called Ms. Povinelli to

chastise her for discussing Ms. Heim's video with Ms. Melis and Mr. Inman and admonished her

not to further discuss or disclose Ms. Heim's naked video to anyone else. Ms. Riskin then again

demanded that Ms. Povinelli delete Ms. Heim's video.

29.     Despite Kroll adopting the New York State model sexual harassment policy and

investigation guidelines in their U.S. Policy Guide, Kroll performed no investigation.  Kroll's

failures, by Ms. Riskin and others, included:

- Kroll gathered no evidence to determine the veracity of Ms. Heim's explanation;

- Kroll did not pull data from Ms. Heim's business phone to determine if she had done this before, who she sent videos to previously and were any of those individuals senior management (as many now have presumed);

- Kroll did not investigate if others had been the recipient of this particular graphic adult video, were any of those recipients senior management or were they perhaps just regular employees too embarrassed or uncomfortable to come forward;

- Kroll did not interview others who may have been involved or who were aware of Ms. Heims sexually explicit behavior in the past;

- Shockingly Kroll never even interviewed the victim, Ms. Povinelli; and

- Kroll did not draft a report detailing all the evidence gathered, all the interviews conducted and what was exactly said by whom.

30.     Kroll, by Ms. Riskin and others, was made to decide if it is a company that

condones sexual harassment of its employees or whether it takes action to protect the victim(s) of

sexual harassment in their workplace. Kroll chose the former.

## III.

## <u>DEFENDANT UNLAWFULLY TERMINATED PLAINTIFF</u>

31.     On March 12, 2024, Plaintiff's counsel sent a draft gender discrimination complaint to Defendant's counsel under a cover letter contending that plaintiff was the victim of unlawful discrimination.

32.     In the afternoon of March 14, 2024, Defendant's counsel left Plaintiff's counsel a voicemail advising plaintiff's counsel that Defendant was reviewing Plaintiff's allegations and that he expected to communicate about the legal claims the following week.

33.     In the early evening of March 14, 2024, Plaintiff was advised that she was summarily terminated for allegedly sending business documents to her personal email address.

34.     While Plaintiff may have sent emails to her personal email address so that she could complete work for defendant and/or to preserve evidence of the discriminatory treatment she endured, she never revealed at any time confidential/proprietary information to any third parties.

35.     Separately, it was the work culture at Kroll to send business documents to personal email addresses in order to more easily complete work tasks.

36.     Defendant employees regularly sent business documents to their personal email addresses as apart of accomplishing work tasks.

37.     Upon Information belief, Defendant employees are not disciplined for sending work documents to their email addresses and certainly are not terminated.

38.     Despite her stellar work performance, Plaintiff received no progressive discipline for this alleged offense but rather Defendant weaponized this alleged work transgression to retaliate against Plaintiff for complaining of gender discrimination and sexual harassment.

6

39.     On March 18, 2024, Defendant filed a lawsuit against Plaintiff contending that she improperly sent confidential business documents to her personal email address.

40.     Both plaintiff's termination and Kroll's filed lawsuit against her constitute blatant acts of retaliation against Plaintiff, the timing of which establishes without doubt.

41.     Defendant has not filed lawsuits against its other employees under the same circumstances, except to retaliate against employees for complaining of discrimination.

42.     Defendant's counsel intentionally misled Plaintiff's counsel concerning counsel's "investigation" in order to delay the filing of Plaintiff's lawsuit so that Defendant could be first to the courthouse steps.

43.     Defendant's obvious retaliatory and discriminatory adverse employment actions taken against plaintiff were in reckless disregard of her civil rights under New York State and New York City Human Rights statutes.

44.     Defendant had no legitimate business reason for the adverse employment actions taken against plaintiff.  Defendant's stated reasons for the termination are an obvious pretext for gender discrimination and retaliation.

45.     Defendant's conduct has had a continuing impact on plaintiff.

## CAUSE OF ACTION I

46.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "45" as if incorporated and realleged herein.

47.     Defendant discriminated against plaintiff due to her gender, sexually harassed plaintiff and retaliated against plaintiff for complaining of sexual harassment and gender discrimination.

48.     By reason thereof, defendant has violated Executive Law §296, and plaintiff has

been damaged in an amount to be determined at trial.

### CAUSE OF ACTION II

49.     Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "45" and "47" as if incorporated and realleged herein.

50.     By reason thereof, defendant has violated New York City Administrative Code §8-502(a), and plaintiff has been damaged in an amount to be determined at trial.

### PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

**WHEREFORE,** plaintiff demands judgment against defendant as follows:

(i)     On the First Cause of Action assessing compensatory damages in an amount to be determined at trial;

(ii)    On the Second Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(iii)   Attorney fees and disbursements; and

(iv)    For such other relief as the Court deems just and proper.

Dated:  New York, New York
        March 19, 2024

**KAISER SAURBORN & MAIR, P.C.**

By:_____
        Daniel J. Kaiser, Esq.
        William H. Kaiser, Esq.

        Attorneys for plaintiff
        30 Broad Street, 37th Floor
        New York, New York 10004
        (212) 338-9100

8