UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA POVINELLI,

    *Plaintiff,*

v.

KROLL, LLC,

    *Defendant.*

**Civil Action No. 1:24-cv-02066**

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S SUMMARY JUDGMENT MOTION**

---

GREENBERG TRAURIG, LLP

*/s/ Robert H. Bernstein*
Robert H. Bernstein (admitted *pro hac vice*)
Michael J. Slocum
*Attorneys for Defendant*
*Kroll, LLC*
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
(973) 360-7900 (Phone)
(973) 301-8410 (Facsimile)
bernsteinrob@gtlaw.com
slocumm@gtlaw.com

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS .............................................................................. 2

LEGAL ARGUMENT ................................................................................................................ 5

    I.    Kroll Is Entitled to Summary Judgment Dismissing Plaintiff's Claims. ................. 5
    II.    Plaintiff Cannot Demonstrate Sex Harassment under the NYSHRL or NYCHRL. .................................................................................................................. 6
    III.    Plaintiff Cannot Demonstrate Sex Discrimination under the NYSHRL or NYCHRL. .................................................................................................................. 8
    IV.    Plaintiff Cannot Demonstrate Retaliation under the NYSHRL or NYCHRL. ..................................................................................................................... 9

CONCLUSION ......................................................................................................................... 11

ACTIVE 711541054v1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................................5

*Ayers v. Bloomberg, L.P.*,
    165 N.Y.S.3d 554 (App. Div., 2nd Dept. 2022).............................................................8

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2nd Cir. 1999) ..........................................................................................5

*Celotex v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................................5

*D'Amico v. City of New York*,
    132 F.3d 145 (2nd Cir. 1998) ..........................................................................................6

*El Sayed v. Hilton Hotels Corp.*,
    627 F.3d 931 (2nd Cir. 2010) ........................................................................................10

*Ferrnado-Dehtiar v. Anesthesia Group of Albany, PC*,
    727 F.Supp.3d 165 (N.D.N.Y. 2024)..........................................................................7, 8

*Golden Pacific Bancorp v. FDIC*,
    375 F3d 196 (2nd Cir. 2004) ...........................................................................................6

*Gordon-Mallett v. Mount Sinai Hospitals Group, Inc.*,
    22-cv-1159, 2024 WL 1513910 (S.D.N.Y. Apr. 8, 2024) ..........................................8, 9

*King v. Aramark Services Inc.*,
    96 F.4th 546 (2nd Cir. 2024) .........................................................................................10

*Kroll v. Povinelli*,
    24-cv-1977 (S.D.N.Y.).....................................................................................................1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...........................................................................................................5

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).........................................................................................................10

*Mendez-Nouel v. Gucci America, Inc.*,
    542 Fed. Appx. 12 (2nd Cir. 2013)...............................................................................6, 7

*Nofal v. IMCMV Times Square LLC*,
    2024 WL 1138928 (S.D.N.Y. Mar. 15, 2024) .................................................................8

*Pilgrim v. McGraw-Hill Cos.*,
    599 F.Supp.3d 462 (S.D.N.Y. 2009) .............................................................................10

*Redd v. N.Y. State Div. of Parole*,
    678 F.3d 166 (2nd Cir. 2012) ..........................................................................................6

ACTIVE 711541054v1

*Estate of Richards by Stephens v. City of New York*,
  1:18-cv-11287, 2024 WL 3607220 (S.D.N.Y. July 31, 2024)..................................................5

*Vasquez v. New York City Dept. of Educ.*,
  667 Fed. Appx. 326 (2nd Cir. 2016)..................................................................................9

*Wheeler v. Praxair Surface Technologies, Inc.*,
  694 F.Supp.3d 432 (S.D.N.Y. 2023)...............................................................................6, 7

*Woodman v. WWOR-TV, Inc.*,
  411 F.3d 69 (2nd Cir. 2005) ............................................................................................5

*Zann Kwan v. Andalex Group LLC*,
  737 F.3d 834 (2nd Cir. 2013) ...................................................................................10, 11

**Statutes**

Code § 8-107(7) ...............................................................................................................10

N.Y. Exec. Law § 296(1)(e)..............................................................................................10

N.Y. Exec. Law § 296(1)(h) ...............................................................................................6

New York City Human Rights Law................................................................................2, 6

New York City Human Rights Laws ...................................................................................1

NYCHRL .............................................................................................................6, 7, 8, 9, 10

NYCHRL.  N.Y ...................................................................................................................10

NYSHRL...................................................................................................................6, 7, 8, 9

State Human Rights Law ................................................................................................2, 6

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................................5

Rule 56(e)............................................................................................................................6

Rule 56.1 .............................................................................................................................3

ACTIVE 711541054v1

Defendant Kroll, LLC ("Kroll") hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment dismissing Plaintiff Anna Povinelli's ("Povinelli") claims of sex harassment, sexual discrimination, and retaliation under the New York State and New York City Human Rights Laws.

## PRELIMINARY STATEMENT

Kroll is a global leader in financial and risk advisory services. Kroll employed Plaintiff as a Managing Director until March 2024, when Kroll terminated Plaintiff's at-will employment for her misappropriation of its confidential, trade secret, and proprietary corporate and client data. Importantly, Plaintiff has never denied that she took and retained Kroll's data, ultimately forcing Kroll to assert trade secret misappropriation claims against her in a separate lawsuit pending before this Court. *See Kroll v. Povinelli*, 24-cv-1977 (S.D.N.Y.).

Notwithstanding her admitted unlawful misconduct, Plaintiff alleges that Kroll terminated her employment in retaliation for having raised concerns several months earlier about a 30-second video text inadvertently sent to her by a female colleague, Alyssa Heim, in which Ms. Heim appears nude. Plaintiff admits she has zero reason to dispute Ms. Heim intended the video for her boyfriend, and that sending the video to Plaintiff was entirely accidental – an accident for which Ms. Heim effusively apologized to Plaintiff in writing. Furthermore, Plaintiff does not dispute that Kroll's Chief Human Resources Officer, Kroll Business Services, interviewed both Plaintiff and Ms. Heim about the incident, concluded it was an accident on Ms. Heim's part, and issued Ms. Heim written discipline. Nonetheless, Plaintiff alleges being accidentally exposed to this 30-second video constituted unlawful sexual harassment. Further, Plaintiff claims she was later terminated in retaliation for complaining about it.

1

Against these undisputed record facts, Kroll is entitled to summary judgment dismissing Plaintiff's claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Plaintiff's sexual harassment claim fails for the undisputed reason that Plaintiff cannot demonstrate that Ms. Heim's sending her the video – which is the one and only incident Plaintiff relies upon in support of her claim – was in any way directed to Plaintiff, let alone because of her sex. To the contrary, Plaintiff admits she has no reason to doubt that it was all an accident. Moreover, Plaintiff cannot plausibly contend that her mistaken receipt of a single video rose above the level of a "petty slight" to be actionable under the law.

Plaintiff's sexual discrimination claim equally fails. Simply put, Plaintiff cannot identify any male employee who ever engaged in the same misconduct in which Plaintiff admits she engaged, let alone one whom Kroll declined to discipline. Moreover, one of the key decision-makers, Monique Melis, is herself a woman. It strains credulity to maintain that Ms. Melis would conspire to terminate Plaintiff's employment because she is female. Plaintiff thus cannot remotely demonstrate that Kroll's reason for terminating her was a pretext for sex discrimination.

Plaintiff's retaliation claim fails for the same reasons. Plaintiff cannot show that Kroll's stated reason for terminating her employment – Plaintiff's admitted misappropriation of the company's trade secrets and other confidential information – was merely a pretext for a retaliatory motive stemming from Plaintiff's complaint about Ms. Heim's video.

## **STATEMENT OF UNDISPUTED FACTS**

The facts underlying this motion are set forth in Kroll's Rule 56.1 Statement of Undisputed Material Facts. The following narrative statement of undisputed facts is submitted per Rule 5.K.iii. of this Court's Individual Rules and Practices in Civil Cases.

2

Plaintiff was employed as an Associate Director with Kinetic Partners, which Kroll acquired in January 2015. *See* (Plf Dep. 30:7-14).[1] Kroll promoted Plaintiff to the role of Managing Director in March 2022, and as of roughly the first quarter of 2023 Plaintiff reported to Nicolas Inman, Global Head of Compliance Consulting. (Plf Dep. 30:15-17); (Inman Dep. 13:6-18). Mr. Inman in turn reported to Monique Melis, Managing Director and Global Head of Financial Services Compliance and Regulation. (Melis Dep. 13:2-6). Kroll at all times employed Plaintiff at-will, and as such, Plaintiff understood that both she and Kroll could terminate their employment relationship at any time, with or without notice and with or without cause. (Plf Dep. 36:7-24).

As a Kroll employee, Plaintiff was trained on the Company's Confidentiality Policy and its Acceptable Use of Assets Policy. (Plf Dep. 37:8 to 38:11, 39:8-23); (Plf Dep. Exs. 7 & 8). Both Policies make it clear that compromising the security of Kroll's confidential, proprietary, and trade secret information can result in discipline, including potential termination of employment. *Id.* Plaintiff knew that violating Kroll's confidentiality policies could lead to termination of her employment. (Plf Dep. 38:18-22).

Over Thanksgiving weekend 2023, Plaintiff received a video text message from a fellow Managing Director, Ms. Heim. (Plf Dep. 47:21-25, 48:10-13). In the video, which lasts roughly thirty seconds, Ms. Heim is nude. (Heim Dep. 11:19 to 12:4). Ms. Heim had intended to send the video to her boyfriend, but mistakenly sent it to Plaintiff. (Heim Dep. 11:19-24, 12:1-18).

Plaintiff brought the video to the attention of Kroll's Human Resources department, and her concerns were escalated to Susan Riskin, Chief Human Resources Officer, Kroll Business

---

[1] All citations to the record are as set out in Kroll's Rule 56.1 Statement and the accompanying Bernstein Decl.

3

Services. (Plf Dep. 72:19-25, 73:16 to 74:5); (Plf Dep. Ex. 13); (Lewis Dep. 15:18-25); (Riskin Dep. 22:7-16). Plaintiff met with Ms. Riskin in person for roughly thirty minutes on December 4, 2023, to discuss her concerns. (Plf Dep. 74:8-20, 77:15-19). After speaking with Plaintiff, Ms. Riskin also spoke with Ms. Heim and with Kroll's IT Department. (Riskin Dep. 27:20-24, 33:23 to 34:18). Ms. Riskin determined that Ms. Heim had improperly used a Kroll-issued device to send the video text, but that the video text itself was never meant for Plaintiff – rather, Ms. Heim had intended to send it to her boyfriend. (Riskin Dep. 28:8-13, 32:16-20, 33:23 to 34:18).

Based upon the results of her investigation, Ms. Riskin issued Ms. Heim a written disciplinary notice on December 7, 2023. (Riskin Dep. 62:2-17); (Riskin Dep. Ex. 3). Separately, the next day, December 8, 2023, Ms. Heim wrote Plaintiff an email apologizing for the incident. (Plf Dep. 61:20 to 62:14); (Plf Dep. Ex. 11). Additionally, Ms. Riskin met with Plaintiff to inform her the company's investigation into her concerns had been concluded. (Riskin Dep. 36:21 to 37:11).

In January 2024, Mr. Inman was informed that due to suspicions Plaintiff may be seeking to leave Kroll and move to a competitor, the Company launched a standard internal review of Plaintiff's email usage. (Inman Dep. 36:11-22). Shortly thereafter, Mr. Inman was advised the review had in fact revealed Plaintiff's "theft of intellectual property." (Inman Dep. 31:15 to 32:14). Accordingly, Kroll placed Plaintiff on a paid administrative leave pending further investigation. (Inman Dep. 29:16-23, 30:22 to 31:5, 34:21 to 35:3); (Plf Dep. 92:5-11). Ultimately, Kroll's Information Security Escalations and Investigations Team issued a report concluding that Plaintiff "sent numerous work-related items out to personal email" and "sent corporate and client data to her personal web mail account without approval." *See* Bernstein Decl. Ex. M.

After reviewing the list of sensitive, proprietary documents Plaintiff had stolen, Mr. Inman and Ms. Melis concluded that Plaintiff had engaged in gross misconduct requiring immediate termination of employment. (Inman Dep. 41:23 to 42:11); (Melis Dep. 30:19 to 31:6). Kroll notified Plaintiff of her termination in writing on March 15, 2024. (Plf Dep. 102:14-24); (Plf Dep. Ex. 15).

## LEGAL ARGUMENT

### I. Kroll Is Entitled to Summary Judgment Dismissing Plaintiff's Claims.

"A party is entitled to summary judgment when there is no 'genuine dispute as to any material fact' and the undisputed facts warrant judgment for the moving party as a matter of law." *Estate of Richards by Stephens v. City of New York*, 1:18-cv-11287, 2024 WL 3607220 * 3 (S.D.N.Y. July 31, 2024) (quoting Fed. R. Civ. P. 56(a)). *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A "material fact" is one that "might affect the outcome of the suit under the governing [substantive] law," and a dispute as to that fact is "genuine" if "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the initial burden of establishing the absence of any genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has done so, to survive summary judgment the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250.

"In determining whether a genuine issue of material fact exists for trial, [courts] are obliged 'carefully [to] distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2nd Cir. 2005) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2nd Cir. 1999)). Importantly, "[a] non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec.*

5

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, Rule 56(e) requires that the non-movant "set forth specific facts showing that there is a genuine issue for trial." Moreover, "'the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 200 (2nd Cir. 2004) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2nd Cir. 1998)).

Measured by these familiar standards, Kroll is entitled to summary judgment dismissing all three theories Plaintiff alleges, namely, sex harassment, sex discrimination, and retaliation.

## II. Plaintiff Cannot Demonstrate Sex Harassment under the NYSHRL or NYCHRL.

The New York State Human Rights Law ("NYSHRL") declares it "an unlawful discriminatory practice" for an employer "to subject any individual to harassment <u>because of</u> an individual's … sex[.]" *See* N.Y. Exec. Law § 296(1)(h) (emphasis added). "Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment <u>because of</u> the individual's membership in one or more of [the enumerated] protected categories." *Id.* (emphasis added). The NYSHRL standard is in line with "the standard to establish a hostile work environment claim under the New York City Human Rights Law ("NYCHRL"), under which a plaintiff need only show that [s]he was treated 'less well than other employees' <u>because of</u> their protected class." *Wheeler v. Praxair Surface Technologies, Inc.*, 694 F.Supp.3d 432, 451-52 (S.D.N.Y. 2023) (emphasis added). As the Second Circuit instructed in affirming the grant of summary judgment dismissing a sex harassment claim under the NYSHRL, "'of course, the plaintiff must establish that the hostile or abusive treatment was because of his or her sex.'" *Mendez-Nouel v. Gucci America, Inc.*, 542 Fed. Appx. 12, 13 (2nd Cir. 2013) (quoting *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 175 (2nd Cir. 2012)).

6

Here, Plaintiff cannot dispute that Ms. Heim never intended to send the video to Plaintiff at all, let alone that Ms. Heim never intended to send the video to Plaintiff "because of" Plaintiff's sex. Ms. Heim testified she is "[a]bsolutely not" sexually attracted to Plaintiff, and the video "was not intended to be sent to" Plaintiff. (Heim Dep. 11:21-24, 14:8-9). Ms. Heim explained she sent the video to Plaintiff entirely "inadvertently." (Heim Dep. 13:21-23). Plaintiff cannot dispute any of this, as she repeatedly admitted she does not know what Ms. Heim's intentions may have been. Plaintiff testified:

> Q. Okay. Do you believe that Ms. Heim sent the video to you intentionally?
>
> A. I don't know what her intentions were.
>
> Q. Do you believe it may have been an accident?
>
> A. I don't know what her intentions were.
>
> Q. Do you have any reason to doubt that it was an accident?
>
> A. I don't know what her intentions were.
>
> (Plf Dep. 61:7-19).

In short, Plaintiff cannot offer any evidence that she received the video "because of" her sex. As the video is the only incident of sexual harassment that Plaintiff alleges, (Plf Dep. 91:18 to 92:4), her sex harassment claim based on the video fails as a matter of law because Plaintiff cannot demonstrate that Ms. Heim sent it to her "because of" her sex. *See, Mendez-Nouel*, 542 Fed. Appx. at 13. *See also, Wheeler*, 694 F.Supp.3d at 451-52.

Plaintiff's sex harassment claim fails for the independent reason that the single incident of Ms. Heim's inadvertent video-text does not satisfy the standard under the NYSHRL or NYCHRL. The court's recent decision in *Ferrnado-Dehtiar v. Anesthesia Group of Albany, PC*, 727 F.Supp.3d 165 (N.D.N.Y. 2024), is instructive. Plaintiff there was an anesthesiologist who alleged that at a wedding afterparty for a colleague, her superior "put his arm around her waist, grabbed

7

her buttocks, held her hand to prevent her from leaving his company, and grabbed her arm to prevent her from leaving[.]" *Id.* at 176. Acknowledging the more lenient standards of the NYSHRL, the court nonetheless granted summary judgment dismissing plaintiff's hostile work environment claims based on these allegations. The court reasoned that "the crux of Plaintiff's allegations do not concern conditions of employment but conduct that occurred outside of the context of the workplace and which was apparently a one-off or very rare (every few years) unpleasant contact with a supervisor, which offensive conduct ceased following Plaintiff's first formal complaint regarding the conduct." *Id.* at 189-90. *See, also, Nofal v. IMCMV Times Square LLC*, 2024 WL 1138928 (S.D.N.Y. Mar. 15, 2024) (granting summary judgment dismissing NYSHRL and NYCHRL religion-based hostile work environment claims because "the remark described by Plaintiff is offensive, but it is on par with what courts in this Circuit have held amounts at most to a petty slight and trivial inconvenience") (internal quotations and alterations omitted) (collecting cases).

Here, Plaintiff complains only of the one video-text that Ms. Heim inadvertently sent her outside of the workplace. Such a trivial incident cannot support Plaintiff's claims even under the lenient standards of the NYSHRL and NYCHRL, and summary judgment is warranted.

### III. Plaintiff Cannot Demonstrate Sex Discrimination under the NYSHRL or NYCHRL.

Plaintiff's amorphous sex discrimination claim fares no better. "The NYSHRL proscribes employment discrimination 'because of and individual's … sex,' while the NYCHRL forbids employment discrimination 'because of [a person's] actual or perceived … gender[.]'" *Gordon-Mallett v. Mount Sinai Hospitals Group, Inc.*, 22-cv-1159, 2024 WL 1513910 at * 9 (S.D.N.Y. Apr. 8, 2024) (emphasis added) (citations omitted). *See also*, *Ayers v. Bloomberg, L.P.*, 165 N.Y.S.3d 554, 557 (App. Div., 2nd Dept. 2022) (instructing both NYSHRL and NYCHRL prohibit employment discrimination "because of that person's … sex/gender") (emphasis added). Even

8

under the more lenient standards of the human rights laws, "'a defendant is not liable if the plaintiff fails to prove the [challenged] conduct is caused at least in part by discriminatory … motives.'" *Gordon-Mallett,* 2024 WL 1513910at * 15 (quoting *Vasquez v. New York City Dept. of Educ.*, 667 Fed. Appx. 326, 328 (2nd Cir. 2016)).

Here, Plaintiff cannot point to any comments anyone at Kroll ever made, either to or about Plaintiff, that she considered discriminatory on the basis of her gender.  (Plf Dep. 104:22 to 105:2).  Plaintiff admits that she was well aware that violations of Kroll's Confidentiality and Acceptable Use of Assets Policies could lead to termination of her employment.  (Plf Dep. 38:18-22).  Plaintiff further admits that she did, on numerous occasions, send Kroll's confidential business records and information to her personal email address.  *See* (Plf Dep. Ex. 9) at ¶¶ 37-42 ("**I DID SEND KROLL BUSINESS DOCUMENTS TO MY PERSONAL EMAIL ADDRESS**").  Moreover, Plaintiff cannot identify a single male employee who was known by Kroll to have sent confidential documents to his personal email and was not terminated.  (Plf Dep. 94:8-11).  This is unsurprising, as doing so would be deemed "gross misconduct" leading to immediate termination.  (Inman Dep. 41:23 to 42:11); (Melis Dep. 30:19 to 31:6).  *See also* (Plf Dep. Exs. 7 & 8) (stating that violations of Confidentiality and Acceptable Use of Assets Policies may result in termination).

Simply put, Plaintiff does not offer any credible evidence upon which a reasonable jury could conclude that Kroll's decision to terminate Plaintiff's employment was "caused at least in part by discriminatory … motives.'" *Gordon-Mallett,* 2024 WL 1513910at * 15 (quoting *Vasquez v. New York City Dept. of Educ.*, 667 Fed. Appx. 326, 328 (2nd Cir. 2016)).  Plaintiff's sex discrimination claim therefore fails as a matter of law.

**IV.   Plaintiff Cannot Demonstrate Retaliation under the NYSHRL or NYCHRL.**

Finally, Plaintiff's retaliation claim requires dismissal as a matter of law.  The NYSHRL makes it unlawful for an employer "to discharge, expel or otherwise discriminate against any

9

person <u>because</u> he or she has opposed any practices forbidden under" the statute. N.Y. Exec. Law § 296(1)(e) (emphasis added). Similarly, the NYCHRL prohibits employers from "retaliate[ing] or discriminat[ing] in any manner against any person <u>because</u> such person has (i) opposed any practice forbidden under" the NYCHRL. N.Y. City Admin. Code § 8-107(7). *Cf. Pilgrim v. McGraw-Hill Cos.*, 599 F.Supp.3d 462, 469 (S.D.N.Y. 2009).

Plaintiff alleges that Kroll's stated reasons for terminating her employment (i.e., Plaintiff's admitted unlawful misappropriation of Kroll's trade secrets and other information in violation of its policies) were a pretext designed to conceal Kroll's true reason for terminating Plaintiff – i.e., her complaint about Ms. Heim's video. The familiar burden-shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), therefore applies. *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2nd Cir. 2013). Under that framework, Plaintiff must first establish a prima facie case by demonstrating that she participated in a protected activity of which Kroll was aware, and that activity was causally connected to Kroll's termination of Plaintiff's employment. Once Plaintiff has done so, the burden shifts to Kroll to articulate a legitimate, non-retaliatory reason for the termination. Once Kroll does so, the ultimate burden shifts back to Plaintiff to produce evidence that Kroll's stated reasons were mere pretext for a retaliatory motive. *Id.* at 844-46.

To demonstrate pretext, Plaintiff must identify "'weaknesses, implausibilities, inconsistencies, or contradictions in' [Kroll]'s offered reason for its adverse action." *King v. Aramark Services Inc.*, 96 F.4th 546, 565 (2nd Cir. 2024) (citing *Zann Kwan*, 737 F.3d at 846). "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847 (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2nd Cir. 2010)).

10

Plaintiff cannot demonstrate pretext here. Again, Plaintiff fully admits that she did in fact email Kroll's proprietary and confidential information to her personal account. (Plf Dep. Ex. 9) at ¶¶ 37-42 ("**I DID SEND KROLL BUSINESS DOCUMENTS TO MY PERSONAL EMAIL ADDRESS**"). And Plaintiff admits that doing so constitutes grounds for her immediate termination under Kroll's Confidentiality and Acceptable Use of Assets Policies. (Plf Dep. 38:18-22).

Plaintiff's sole argument is that the timing of her termination raises an inference of retaliation. But as the Second Circuit instructs, temporal proximity, without more, cannot demonstrate pretext sufficient to defeat summary judgment. *Zann Kwan*, 737 F.3d at 847. Plaintiff's retaliation claim must therefore fail as a matter of law.

## CONCLUSION

For the foregoing reasons, Kroll respectfully requests an Order granting summary judgment dismissing all Plaintiff's claims against it, and such other relief as the Court deems appropriate.