UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA POVINELLI,

Plaintiff,

-v-

KROLL, LLC,

Defendant.

24-CV-02066 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Anna Povinelli ("Plaintiff") brings this suit against Defendant Kroll LLC ("Defendant" or "Kroll") asserting claims for sex discrimination, sex harassment and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). *See* ECF No. 1 ("Complaint"). Before the Court is Kroll's motion for summary judgment. ECF No. 36. For the reasons that follow, the Motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

### A. Local Rule 56.1 Statement

The Court begins by addressing Plaintiff's deficient response to Defendant's Local Rule 56.1 statement (ECF No. 36-3) ("Def. 56.1 Stmt."). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir.

2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). The rule demands that "any motion for summary judgment . . . be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). "[E]ach statement denying and controverting any statement of material fact[] must be followed by *citation to evidence* that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d) (emphasis added). Any statements of material facts set forth by the moving party "will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c).

In her response to Defendant's Local Rule 56.1 Statement, ECF No. 42 at 1-4 ("Pl. 56.1 Reply"), Plaintiff attempts to controvert certain of Defendant's Rule 56.1 statements with denials of knowledge or information. *See* Pl. 56.1 Reply, ¶¶ 15, 16, 20-22, 25-27, 31-33. Plaintiff cannot "raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of knowledge and information[,] in part because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.*, No. 06-CV-02142 (GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (cleaned up). Plaintiff's unsupported denials thus fail to controvert Kroll's statements and

cannot create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]"). The Court therefore deems paragraphs 15, 16, 20-22, 25-27, 31-33 admitted.

Further, at paragraphs 34, 35, 37 and 38 of that same response, Pl. 56.1 Reply, Plaintiff responds to Kroll's statements with "Denied [Declarations of Povinelli and Defendants [sic] depositions attached to Declaration of Daniel J. Kaiser]." In total, the declaration and depositions run to some 344 pages. ECF No. 41. The Court declines to hunt through these materials for the relevant evidence. The Court thus deems admitted any statements for which the Plaintiff did not provide citations to specific evidence in the record for failure to comply with Local Rule 56.1 and Rule 56(c) of the Federal Rules of Civil Procedure. *See, e.g.*, *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211 (SJB), 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020). If the Court discerns a contradicting statement in the relatively shorter declaration of the Plaintiff, it will deem a statement disputed.

The remaining paragraphs of Plaintiff's 56.1 response explicitly admit the corresponding paragraphs of Kroll's 56.1 statement. Pl. 56.1 Reply, ¶¶ 1-14, 17-19, 23, 24, 28-30, 36, 39. Thus, Plaintiff either has admitted, or is deemed to have admitted, all parts of Defendant's 56.1 statement. Plaintiff did however file a procedure-compliant counter-statement under Local Rule 56.1. ECF No. 42 at 4-7 ("Pl. 56.1 Add'l Stmt"). Where relevant, it is considered below.

### B. Factual Background

Unless otherwise noted, the following facts are undisputed and supported by admissible evidence. Plaintiff was employed as an Associate Director with Kinetic Partners when it was acquired by Kroll in January 2015. Def. 56.1 Stmt., ¶ 1. Kroll promoted her to Managing Director in March 2022. *Id.*, ¶ 2. From the first quarter of 2023 onwards, Plaintiff reported to Nicholas Inman ("Inman"), Global Head of Compliance Consulting. *Id.*, ¶ 3. Inman reported to Monique Melis ("Melis"), Managing Director and Global Head of Financial Services Compliance and Regulation. *Id.*

During her employment, Plaintiff was informed of, and received training on, Kroll's Confidentiality and Acceptable Use of Assets Policies. *Id.*, ¶ 6. The former made clear that the confidentiality of "[Kroll's] trade secrets, client information and other relevant information . . . is vital to [Kroll's] interests and success." *Id.*, ¶ 7. The latter "prohibited [employees] from using third-party . . . email providers . . . to create, send, receive, or store Firm information." *Id.*, ¶ 8. Both warn that violations "may result in corrective action, up to and including termination of employment." *Id.*, ¶¶ 7, 8. Plaintiff knew that violating these policies could lead to discipline, including termination. *Id.*, ¶ 9.

On November 27, 2023, over the Thanksgiving weekend, Plaintiff received by text message a thirty-second-long sexual video from a fellow Kroll Managing Director ("MD1"), which depicted MD1 naked. *Id.*, ¶ 10, 11; Pl. 56.1 Add'l Stmt., ¶ 1; ECF No. 45 ("Def. 56.1 Reply"), ¶ 1. MD1 represented that the text "was not

intended to be sent to" Plaintiff. Def. 56.1 Stmt., ¶ 12. Instead, MD1 claims that she intended to text the video to her boyfriend. *Id.*, ¶ 13. According to MD1, a few hours after sending the video, she realized that she had mistakenly sent the video to Plaintiff rather than her boyfriend. *Id.*, ¶ 14. She then tried to delete the video, but could not, as Plaintiff had already opened it. *Id.*

Prior to this point, Plaintiff had had no performance issues or complaints at work; rather, she had received regular praise, performance-based compensation increases and promotions. Pl. 56.1 Add'l Stmt., ¶ 8; Def. 56.1 Reply, ¶ 8. The same day she received the video, Plaintiff emailed Tysheima Muckle ("Muckle"), Kroll's Chief Human Resources Officer, Governance and Risk Advisory, to ask if Muckle was available to speak. Def. 56.1 Stmt., ¶ 15; Pl. 56.1 Add'l Stmt., ¶ 2; Def. 56.1 Reply, ¶ 2. Plaintiff and Muckle were unable to find a mutually convenient time to speak and in fact never did discuss the video. Def. 56.1 Stmt., ¶ 16. Plaintiff then contacted Colton Lewis ("Lewis"), People Business Partner, about the video. *Id.*, ¶ 17. Lewis told Plaintiff that he was not the right person to talk to about the video, and referred Plaintiff to Susan Riskin ("Riskin"), his boss. *Id.* On December 4, 2023, Riskin met in person with Plaintiff and discussed the video. *Id.*, ¶ 19. By the end of the meeting, Plaintiff considered that she had lodged a complaint of potential sexual harassment. *Id.*

Riskin then arranged to discuss the incident with MD1. *Id.*, ¶ 20. At their meeting, MD1 told Riskin that she had sent the video by accident, and was embarrassed and humiliated by her mistake. *Id.*, ¶ 21. She further explained that

her mistake had been caused by the shared first letter of Plaintiff and MD1's boyfriend's names. *Id.* Riskin also established through Kroll's IT Department that MD1 had sent the video from a Kroll-issued device. *Id.*, ¶ 22. Based on her investigation, Riskin concluded that MD1 had violated Kroll's mobile device usage policy by sending the video to Plaintiff from her work phone. *Id.*, ¶ 23.

MD1 was not terminated for this infraction. Pl. 56.1 Add'l Stmt., ¶ 15; Def. 56.1 Reply, ¶ 15. Instead, on December 7, 2023, Riskin issued MD1 a written warning, stating that she had breached the policy through sending the November 27 video and included the proviso that "[i]f, in the future, there is another breach of this policy, there will be additional disciplinary action, up to and including termination." Def. 56.1 Stmt., ¶ 24. On December 8, 2023, MD1 emailed Plaintiff to apologize for having sent her the video. Def. 56.1 Stmt., ¶ 26. In the email, MD1 told Plaintiff that she was "obviously beyond mortified," had sent her the text accidentally, was "sincerely apologetic," and that it would "never happen again." *Id.* Riskin also met with Plaintiff to tell her that the investigation into her concerns had been concluded. *Id.*, ¶ 27.

These three complaints were not the only complaints about the video that Plaintiff made. Pl. 56.1 Add'l Stmt., ¶ 3; Def. 56.1 Reply, ¶ 3. Plaintiff also complained to Melis and Inman. Pl. 56.1 Add'l Stmt., ¶ 4; Def. 56.1 Reply, ¶ 4 (denying other parts of Pl. 56.1 Add'l Stmt., ¶ 4).

Plaintiff alleges that on December 19, 2023, she was chastised by Riskin for having discussed the video with Melis and Inman. Pl. 56.1 Add'l Stmt., ¶ 4. Kroll

denies this in its response to Plaintiff's Rule 56.1 counterstatement. Def. 56.1 Reply, ¶ 4.[1]

On January 22, 2024, Plaintiff's counsel sent a demand letter to Kroll. ECF No. 40-1. In the letter, Plaintiff complains that Kroll failed to conduct an adequate investigation into MD1's conduct. *Id.* at 4-7. The letter faults the human resources department for crediting MD1's explanation without interviewing Plaintiff, without pulling data from MD1's devices to determine whether she had sent adult videos to other employees at Kroll, and without interviewing other employees to ascertain if there had been other similar misconduct by MD1. *Id.* The letter further accused Kroll of protecting MD1, speculating that she had an inappropriate relationship with someone in senior management. *Id.* at 3. Plaintiff's counsel represented that the stress of continuing to work with MD1 had caused Plaintiff to experience anxiety attacks. *Id.* at 7. The letter demanded that Kroll offer Plaintiff a settlement package, which would include her exiting the company. *Id.* at 8.

Shortly after receiving that letter, Kroll took steps to prevent Plaintiff from engaging with new clients and reassigned some of her work to other Managing

---

[1] Kroll predicates its denial on Riskin's deposition testimony. ECF No. 41-2 ("Riskin Dep.") at 36:21–37:11. The cited portion of Riskin's deposition does not directly address this allegation, however. It instead concerns Riskin's meeting with Plaintiff to tell her that the investigation was over. Plaintiff's declaration records that meeting as "on or about December 7, 2023." ECF No. 41-6 ("Pl. Decl."), ¶ 16. Plaintiff's declaration records the alleged chastisement as having happened "on or about" December 19, 2023. *Id.*, at ¶ 23. "[W]here . . . cited materials do not support the factual assertions in the [Rule 56.1] Statements, the Court is free to disregard the assertion." *Holtz*, 258 F.3d at 73. In this case, the Court's analysis remains the same whether this allegation is disputed or admitted.

Directors. ECF No. 40-2. When Plaintiff inquired of Inman, he sent her an email stating that "[i]t is my understanding that you are in the process of discussing an exit" so it would not be "appropriate for you to be involved in new business discussions at this time." *Id.* at 5.; *see* Def. 56.1 Reply, ¶ 6. Plaintiff responded that she had "not had any discussions with anyone about exiting Kroll," and protested that she "should not be excluded from [her] current responsibilities, including but not limited to, prospect calls, client relationships and US FSCR team plans." ECF No. 40-2 at 4. Inman briefly responded that it was up to him and the other manager to determine what roles the team members should perform, and that they had elected to have other Managing Directors perform those tasks. *Id.* at 3-4. On February 2, Plaintiff sent an email in which she again asked Inman for an explanation as to why she had been isolated from other team members and pointing out that, because a large component of her role involved business development, prohibiting her from continuing this work would impede her rating and compensation. *Id.* at 2-3.

In January 2024, Kroll initiated a review of Plaintiff's email. Def. 56.1 Stmt., ¶ 28. It is undisputed that the review was "triggered" by Kroll's receipt of Plaintiff's January 22 demand letter. Pl. 56.1 Add'l Stmt., ¶¶ 5, 18; Def. 56.1 Reply, ¶ 5. Kroll insists that the review began, not for retaliatory reasons, but "because that letter expressly stated Plaintiff was seeking a negotiated departure from Kroll." Def. 56.1 Reply, ¶ 5 (citing ECF No. 41-4 ("Inman Dep."), 36:11-22 and ECF No. 36-17 ("Bernstein Decl.")).

There is no dispute over what Kroll's investigation turned up. The report created by the IT team indicated that "there were no meetings or emails that would suggest a future employer," and no abnormal activity observed in terms of her file uploading and downloading activity. ECF No. 36-17 at 4-5. But Plaintiff had emailed a number of confidential Kroll documents to her personal email address without authorization. Def. 56.1 Stmt., ¶¶ 32-33; ECF No. 36-17 at 4-5. On February 5, 2024, Plaintiff was placed on administrative leave, ostensibly for sending the work emails to her personal email address. Pl. Decl., ¶ 26.

On March 12, 2024, Plaintiff's counsel sent a gender discrimination complaint to Kroll's counsel. Pl. Decl., ¶ 27; *see also* Pl. 56.1 Add'l Stmt., ¶ 7; Def. 56.1 Reply, ¶ 7. Kroll fired Plaintiff on March 15, 2024. Def. 56.1 Stmt., ¶ 39. No one at Kroll interviewed Plaintiff before her firing and Plaintiff was not afforded an opportunity to explain why she emailed the documents to herself. Pl. 56.1 Add'l Stmt., ¶ 17; Def. 56.1 Reply, ¶ 17.

On March 15, 2024, Kroll commenced a civil action against Plaintiff, alleging federal and state law claims for theft of trade secrets. *See Kroll LLC v. Povinelli*, 24-CV-1977 (S.D.N.Y.).

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. a*t 249-50 (citations omitted).

The moving party bears the initial burden of demonstrating "that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The movant may satisfy this burden by "submitting evidence that negates an essential element of the [nonmovant's] claim" or by "demonstrating that the [nonmovant's] evidence is insufficient to establish an essential element of the [nonmovant's] claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[W]here the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (cleaned up). Courts are further "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted).

In cases involving claims of discrimination or retaliation, "an extra measure of caution is merited in affirming summary judgment . . . because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions." *Robinson v. De Niro*, 739 F. Supp. 3d 33, 74 (S.D.N.Y. 2023) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006)). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation . . . and even in the discrimination context, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Id.* (cleaned up).

## DISCUSSION

From the evidence in the record, a reasonable jury could conclude that there was a causal connection between Plaintiff's complaint and Kroll's decision to fire her. Plaintiff's retaliation claims therefore survive. In contrast, Plaintiff can point to no evidence to suggest that MD1 sent Plaintiff the explicit video because of her sex. Accordingly, Kroll's motion for summary judgment is granted with respect to Plaintiff's sex discrimination and harassment claims.

### A. Retaliation

The NYSHRL makes it unlawful for an employer to "discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden" thereunder. N.Y. Exec Law § 296(1)(e). The NYCHRL makes it unlawful for employers "to retaliate or discriminate in any manner against any

person because such person has opposed any practice forbidden under" the statute. N.Y. City Admin. Code § 8-107(7).

Prior to 2019, the NYCHRL and NYSHRL were subject to different and independent standards, with the NYCHRL expanding upon the protections of the state and federal civil rights statutes. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (explaining that federal and state civil rights laws established a "floor below which the City's Human Rights law cannot fall"). In June 2019, however, the New York State Legislature amended the NYSHRL to direct courts to construe the NYSHRL, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. Law. 300. Accordingly, the Court must construe both statutes "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Dao v. Oppenheimer Funds, Inc.*, 515 F. App'x 31, 32 (2d Cir. 2013) (summary order) (quotation marks omitted).

While "case law . . . has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL" in all contexts, *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023), New York courts have generally applied the legal standards developed under the NYCHRL to cases arising under the NYSHRL. *See, e.g.*, *Niemotko v. Mount Saint Mary Coll.*, 241 N.Y.S.3d 306, 310 (2d Dep't 2025) (applying a mixed motive causal

standard in case arising under NYSHRL); *see also Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122-23 (2d Cir. 2024) ("The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard." (footnote omitted)); *Cannizzaro v. City of New York*, 206 N.Y.S.3d 868, 884-85 (N.Y. Sup. Ct. 2023) ("[T]he language of the NYSHRL is now nearly identical to that of the NYCHRL."). Accordingly, the Court will analyze Plaintiff's NYSHRL and NYCHRL claims together.

To prevail on a retaliation claim under the NYCHRL or NYSHRL, "the plaintiff must show that she took an action opposing her employer's discrimination," *Mihalik*, 715 F.3d at 112 (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011)), "and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action," *id.* (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 33-34 (1st Dep't 2009)). Unlike the but-for standard used under Title VII, an employer is liable under the "as a result" NYCHRL standard "if [she] was motivated *at least in part* by an impermissible motive." *Kia Song Tang v. Glocap Search LLC*, No. 14-CV-1108 (JMF), 2015 WL 1344788, at *5 (S.D.N.Y. Mar. 24, 2015) (quoting *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (2d Dep't 2013)); *accord Mihalik*, 715 F.3d at 110 (Plaintiff "must show that she has been treated less well at least in part '*because of* her gender.'").

"[C]ourts in this Circuit typically apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework." *Penzo v. Consol. Edison Co. of New York, Inc.*, No. 19-CV-07478 (MKV), 2024 WL 3824072, at *3 n.6 (S.D.N.Y. Aug. 15,

2024) (citing *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 284 n.1 (S.D.N.Y. 2020)). Accordingly, summary judgment dismissing a claim under the NYCHRL or the NYSHRL should be granted "only if no jury could find [the] defendant liable under any of the evidentiary routes – *McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof." *Robinson*, 739 F. Supp. 3d at 102 (quoting *Sanderson-Burgess v. City of New York*, 102 N.Y.S. 3d 678, 680 (2d Dep't 2019)).

Under the familiar *McDonnell Douglas* burden-shifting framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a *prima facie* case of retaliation. To make out a *prima facie* case of retaliation, a plaintiff must show that (1) he or she engaged in protected activity, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct. *Robinson*, 739 F. Supp. 3d at 101-02 (citing *Bilitch v. N.Y.C. Heath & Hosps. Corp.*, 148 N.Y.S. 3d 238, 246 (2d Dep't 2021)). Having done this, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the firing. If the defendant articulates such a reason, then the burden reverts to the plaintiff to adduce evidence from which a jury could reasonably conclude that the adverse conduct was motivated by the protected conduct. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844-45 (2d Cir. 2013).

"The newer mixed motive framework imposes a lesser burden on a plaintiff" than the *McDonnell Douglas* test. *Robinson*, 739 F. Supp. 3d at 102 (cleaned up). Under the mixed motive test, a plaintiff may defeat a defendant's evidence of legitimate reasons for the challenged conduct by coming forward with evidence from which it could be found that unlawful discrimination was a – but not the only – motivating factor for the conduct. *See Robinson*, 739 F. Supp 3d at 102 (quoting *Hamburg v. N.Y. Univ. Sch. of Med.*, 62 N.Y.S. 3d 26, 32 (1st Dep't 2017)).

Here, the first three prongs of the *prima facie* case are undisputed. The only question is whether Plaintiff can establish a causal connection between her complaints of sexual harassment and the actions taken against her, including her termination. Defendant argues that Plaintiff failed to come forward with evidence from which a retaliatory motive can be inferred. Kroll further argues that it has put forward a legitimate, non-pretextual reason for Plaintiff's termination, ECF No. 36-2 at 10-11—her admitted violation of Kroll's policies regarding sending internal documents to her personal email account. Pl. Decl., ¶¶ 37-42.

To defeat Defendant's summary judgment motion, Plaintiff need not contradict, prove pretextual, nor even cast doubt on Defendant's stated rationale for its actions. If Plaintiff does none of these things, however, she must otherwise demonstrate through admissible evidence that a "reasonable jury could conclude . . . [D]efendant's stated reason[ ] w[as] not [Defendant's] *sole* basis for taking action, and that [Defendant's] conduct was based at least '*in part* on [retaliation].'" *Ya-Chen Chen v. CUNY*, 805 F.3d 59, 76 (2d Cir. 2015) (quoting *Melman v. Montefiore*

*Med. Ctr.*, 946 N.Y.S.2d 27, 41 (1st Dep't 2012)) (emphasis added). Indeed, showing a genuine issue of fact as to whether Plaintiff's protected activity played *any* part in Defendant's decision to restrict her work or to terminate her employment would be enough to deny summary judgment on the city and state law claims.

Plaintiff relies heavily upon the temporal proximity between her complaints of sexual harassment and Kroll's actions to, in quick succession, reassign her job duties, place her on administrative leave, terminate her employment, and then bring suit against her in federal court. Under the mixed motive framework, when resisting a motion for summary judgment, "evidence of temporal proximity alone is not enough to demonstrate retaliation under the NYCHRL." *Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018) (summary order); *see also Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 802 (S.D.N.Y. 2020) (holding that plaintiff must provide evidence of more than temporal proximity to show pretext where employer has shown non-retaliatory reason for action).

Yet the record here provides further evidence from which a jury could determine that Plaintiff's protected conduct played a role in Kroll's conduct. First, Kroll admits that it was the receipt of Plaintiff's demand letter that "triggered" much of their actions, a letter which itself constitutes protected activity. It is undisputed that Plaintiff's job duties were reassigned and restricted as a result of that demand letter, before Kroll's investigation uncovered that Plaintiff had emailed herself internal documents. Additionally, Plaintiff has attested that she was admonished by Riskin for making complaints regarding the video to her

supervisors. Plaintiff further attests that it was part of the "work culture" at Kroll for employees to send business documents to personal email addresses in order to more easily complete work tasks, and that other employees "regularly" send internal documents to their personal email addresses and were not disciplined for doing so. Pl. Decl., ¶¶ 31-33. This evidence, combined with temporal proximity, is sufficient to create an issue of fact for the jury.

**B. Discrimination and Harassment**

Under the NYSHRL, sexual harassment in employment is explicitly prohibited, *see* N.Y. Exec. L. § 296(1)(h), while under the NYCHRL, sex harassment is treated as a form of sex discrimination, NY. Admin. Code § 8-107(1)(a)(3). *See Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009); *see also Owens v. PriceWaterhouseCoopers LLC*, 786 F. Supp. 3d 831, 844 (S.D.N.Y. 2025). "For HRL liability, . . . the primary issue for a trier of fact in harassment cases, as in other terms-and-conditions cases, is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of her gender. At the summary judgment stage, judgment should normally be denied to a defendant if there exist triable issues of fact as to whether such conduct occurred." *Williams*, 872 N.Y.S.2d at 39. A plaintiff need not prove that the harassing conduct rose to the level of severe and pervasive, *Mihalik*, 715 F.3d at 110, but it must consist of "more than 'petty slights and trivial inconveniences.'" *Mauro v. N.Y.C. Dep't of Educ.*, No. 19-CV-04372 (GBD) (KHP), 2021 WL 4391242, at *4 (S.D.N.Y. Sept. 24, 2021) (citation omitted).

Plaintiff's discrimination and harassment claim rests solely on the receipt of the November 27 video from MD1. Where a plaintiff alleges that she was subjected to sexually explicit images in the workplace, then she may well have a claim that she was treated less well than other employees because of her gender. *See, e.g.*, *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) ("[T]he mere presence of pornography in a workplace can alter the 'status' of women therein"); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 70 (S.D.N.Y. 2020) (collecting cases). Based on the instant record, however, no reasonable jury could conclude that Plaintiff was the target of such conduct, let alone that her sex played any role in why she was sent the offensive video.

The undisputed evidence is that MD1 sent the adult video to Plaintiff entirely by accident and not on account of Plaintiff's sex. In her opposition papers, Plaintiff points to no evidence from which it can be concluded that she was treated differently because of her sex. *See Palmer v. Cook*, 108 N.Y.S.3d 297, 310 (N.Y. Sup. Ct. 2019) (plaintiff fails to state claim for discrimination under the NYSHRL or NYCHRL based on allegation that she found defendant watching pornography at work). Accordingly, Plaintiff's claims for sex discrimination and harassment are dismissed.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED IN PART AND**

**DENIED IN PART**. The Clerk of Court is directed to terminate ECF No. 36.

SO ORDERED.

Dated: September 30, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge